IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| MCI COMMUNICATIONS SERVICES, INC., a Delaware corporation d/b/a Verizon business Services, and MCIMETRO ACCESS TRANSMISSION SERVICES LLC, a Delaware limited liability company d/b/a Verizon Access Transmission Services,<br><br>    Plaintiffs,<br><br>  vs.<br><br>CITY OF EUGENE, OREGON, an Oregon municipal corporation,<br><br>    Defendant. | Civil No. 07-6059-AA<br>OPINION AND ORDER |

Andrew McBride
Joshua Turner
Wiley Rein LLP
1776 K St NW
Washington DC 20006

Timothy O'Connell
Stoel Rives LLP
600 University St, Suite 3600
Seattle, WA 98101
    Attorneys for plaintiffs

William Gary
Sharon Rudnick
Harrang Long Gary Rudnick P.C.
360 East 10th Avenue, Suite 300
Eugene, Oregon 97401-3273
    Attorneys for defendant

AIKEN, Judge:

Defendant City of Eugene, Oregon moves to dismiss this case due to lack of subject matter jurisdiction and failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(1). Defendant alternatively moves for joinder of necessary parties pursuant to Fed. R. Civ. P. 19. The court held oral argument on September 26, 2007. Defendant's motion to dismiss is granted and alternative motion to join is denied as moot.

## BACKGROUND

Plaintiffs MCI Communications Services, Inc. and MCIMetro Access Transmission Services, LLC ("plaintiffs") filed this lawsuit seeking declaratory and injunctive relief to prevent defendant City of Eugene, Oregon ("defendant" or "City") from enforcing Ordinance 20083, which is codified in part as §§ 3.400 to 3.430 of the Eugene Code, as well as certain administrative orders that implement the Ordinance. Plaintiffs' Complaint, ¶ 1. Specifically, plaintiffs assert that the Ordinance is preempted by § 601(c)(2) of the Federal Telecommunications Act of 1996, Pub. L. No. 104-104, 110 Stat. 56, 143-144 (1996)(FTA). Plaintiffs rely on 47 U.S.C. § 253(a) which generally provides

that no state or local law may prohibit or have the effect of prohibiting any entity from providing telecommunication services. Id. at ¶¶ 93-177. Plaintiffs further assert that the Ordinance as applied discriminates against plaintiffs because the definition of gross revenues applied to plaintiffs is broader than the definition applied to Qwest Corporation ("Qwest"), the incumbent local exchange carrier. Id. at ¶¶ 82-92.

STANDARDS

Under Fed. R. Civ. P. 12(b)(6), once a claim has been stated adequately, it may be supported by "showing any set of facts consistent with the allegations in the complaint." Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S.Ct. 1955, 1960 (2007). See also, Litchfield v. Spielberg, 736 F.2d 1352, 1357 (9th Cir. 1984), cert. denied, 470 U.S. 1052 (1985). For the purpose of the motion to dismiss, the complaint is liberally construed in favor of the plaintiffs, and its allegations are taken as true. Rosen v. Walters, 719 F.2d 1422, 1424 (9th Cir. 1983).

DISCUSSION

The Ordinance at issue imposes certain registration and license requirements on telecommunications providers who engage in any telecommunications activity using facilities located within the City. Specifically, Eugene Code ("EC") §§ 3.405 and 3.415(1) require that all providers "engag[ing] in any telecommunications activity through a communications facility

Page 3 - OPINION AND ORDER

located in the city" register with the City and pay "an annual registration fee in the amount of 2% of the registrants's gross revenues derived from its telecommunications activities with the city." The registration fee described above applies not only to telephone service providers like plaintiffs, but also to other forms of voice, data and video transmissions such as cell phone service, cable service and open video service (OVS). This 2% fee applies to providers who make no use of the City's rights-of-way, as well as to those providers who do use the rights-of-way.

Further, EC §§ 3.410(1) and 3.415(2) require that providers who do use the City's rights-of-way to provide telecommunications services, cable service or OVS "obtain a license" and "pay, in addition to the registration fee . . . a fee in the amount of 7% of the licensee's gross revenues derived from telecommunications activities within the City to compensate the City for use of the rights-of-way." Thus, the registration fee applies to all providers engaged in telecommunication activities within the City, and in addition, the license fee applies to those providers who use facilities in the City's rights-of-way to provide service. In adopting the Ordinance, the City Council directed that the revenues generated by the registration fee "not be used to replace property tax revenue," but instead be used "to fund the City's investment in developing and implementing telecommunications policies and programs that will protect and

advance its citizens' health, safety and welfare."  Declaration of Twylla Miller, Def's Ex. 1.  Notably, the revenues generated by the license fee are placed into the City's general fund to be used for the benefit of the general public.  Miller, Declar., ¶ 5.

Defendant asserts that the Tax Injunction Act, 28 U.S.C. § 1341 (TIA) deprives this court of subject matter jurisdiction over plaintiffs' claims.  Specifically, defendant argues that because its fees are "taxes," they are saved from preemption under Section 253 of the TCA by the state tax saving clause in § 601(c)(2) of the Act.  Plaintiffs respond that the fees at issue are not "taxes" and therefore preempted.

The TIA holds that a plaintiff may not file and maintain in federal district court suits that seek to interfere with the revenue streams of state and local governments.  Id.  The Act provides:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

Id.

The Ninth Circuit requires the examination of three factors to determine what constitutes a "tax."  Bidart Bros. v. California Apple Comm'n, 73 F.3d 925 (9th Cir. 1996). First, the court looks to the nature of the entity that imposes the assessment.  "An assessment imposed directly by the legislature

Page 5 - OPINION AND ORDER

is more likely to be a tax than an assessment imposed by an administrative agency.  Id. at 931.  Second, the court examines the parties upon whom the assessment is imposed.  "An assessment imposed upon a broad class of parties is more likely to be a tax than an assessment imposed upon a narrow class."  Id.  "Where the first two factors are not dispositive, courts examining whether an assessment is a tax 'have tended . . . to emphasize the revenue's ultimate use.'"  Id. at 932 (internal citation omitted).  Assessments treated as general revenues are taxes.  Id.  Assessments placed in a special fund and used only for special purposes are "less likely to be a tax."  Id.  "However, even assessments that are segregated from general revenues are 'taxes' under the TIA if expended to provide 'a general benefit to the public.'"  Id. (internal citation omitted, emphasis added).

　　Here, regardless of defendant's label, I find both the registration fee and license fee qualify as "taxes" for purposes of the TIA.  First, both fees were imposed and enacted by the City's legislative body, the City Council, acting in its legislative capacity.  See Eugene Charter (2002), Ch. II, § 4(1)("Except as this charter provides to the contrary, all power of the city is vested in the city council, the representative legislative body of the city.").  Pursuant to Bidart Bros., an assessment imposed by a legislative body is more likely to be a

Page 6 - OPINION AND ORDER

tax.  Bidart Bros., 73 F.3d at 931.

Second, the registration fee is assessed against a broad group of telecommunication providers, including all telephone and cell phone service providers, cable service providers and OVS providers, who provide service using any facilities within the city.  The license fee is assessed against the same broad group of providers in exchange for their use of the public rights-of-way.  Again, Bidart Bros. holds that an assessment imposed upon a broad class of parties is more likely to be a tax.  Id.

Finally, the revenues generated by these assessments are used to benefit the public at large rather than the telecommunications providers themselves.  See Bidart Bros., 73 F.3d at 932 ("even assessments that are segregated from general revenues are 'taxes' under the TIA if expended to provide a 'general benefit to the public.'")  The defendant City Council directed that the registration fees go towards funding the "city's investment in developing and implementing telecommunications policies and programs that will <u>protect and advance its citizens' health, safety and welfare</u>." Miller Declar. Ex. 1, ¶ 15 (emphasis added).  Moreover, the court notes the Ninth Circuit's admonition that when examining whether an assessment is a tax under the TIA, courts "take a practical and sensible approach" to the analysis.  Hexom v. Oregon Dept. of Transportation, 177 F.3d 1134, 1137 (9th Cir. 1999).  Courts do

not apply a rigid set of rules or elements and then reach a mechanical conclusion.  Id.  Here, the revenue generated by the license fee becomes part of the City's general fund used to fund City services generally, and is not restricted for uses related to telecommunication services of the public right-of-way.  Id. at ¶ 6.

Finally, I find no support for the argument that because a fee is intended to provide compensation to the City, then the fee, by definition, is not a tax for purposes of the TIA.  The Ninth Circuit in Qwest Corp. v. City of Surprise, 434 F.3d 1176 (9th Cir. 2006), specifically rejected plaintiff's warning about being the first court to declare "rental fees' taxes," and cited several cases in which other courts found "rental charges" imposed upon users of public rights-of-ways to be taxes for purposes of the TIA.  Id.

This court decided a similar issue in Time Warner Telecom of Oregon, LLC v. City of Portland, 452 F.Supp.2d 1084 (D. Or. 2006), where the court, applying the Bidart test, concluded that a 5% gross revenue fee (again, regardless of its label) was a tax "because the City places proceeds from the fee in its general fund."  Id. at 1099.  The 5% revenue fee was a franchise fee imposed by the City of Portland's franchise agreements with telecommunications providers to install and operate telecommunications systems in city streets.  The court in City of

Portland relied on the Ninth Circuit's holding in Qwest Corp. v. City of Surprise, where the court found that when "an ordinance requires that a telecommunications provider pay a percentage of its gross revenues to the municipality, and the revenue from that charge is directed to the municipality's general fund, the charge constitutes a tax." Id. at 1184.  The City of Surprise examined fees similar to those at issue here.  Those fees required that certain telecommunications providers pay a charge determined as a percentage of gross revenue, ranging from 2% to 5%.  Id. at 1179.

Relying on the Ninth Circuit's analysis in City of Surprise, the Oregon District Court's analysis in City of Portland and the numerous cases cited within both opinions, I find that defendant's fees are taxes, and therefore this court is divested of subject matter jurisdiction pursuant to the TIA.

Moreover, the court declines to accept jurisdiction over plaintiffs' alleged challenge to the "non-fee provisions' of the Ordinance.  There can be no dispute that plaintiffs' complaint centers around the requirement that they pay the registration and license fees.  Plaintiffs' few other allegations are so entwined with the challenges to the fees themselves that they cannot be practically separated into distinct claims for relief. The state court here has jurisdiction to resolve plaintiffs' claims in their entirety.  Therefore, in the interests of judicial economy

and avoiding piecemeal litigation, and acknowledging that a state proceeding exists that is adequate to protect the parties' rights, plaintiffs' claim is dismissed in its entirety. See Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 817-18 (1976)(in deciding whether to stay or dismiss an action, courts consider factors such as judicial economy and resources, desirability of avoiding piecemeal litigation and whether the state proceeding is adequate to protect the parties' rights).

## CONCLUSION

Defendant's motion to dismiss (doc. 6) is granted, and defendant's alternative motion to join (doc. 6) is denied as moot. This case is dismissed. All pending motions are denied as moot.

IT IS SO ORDERED.

Dated this  9   day of October 2007.

                                          /s/ Ann Aiken
                                                 Ann Aiken
                                  United States District Judge